**GADSDEN CITY BOARD OF EDUCATION, Plaintiff,**

v.

**B.P., a minor, L.H., a minor and Wayne Watts, a person acting as a parent, Defendants.**

No. Civ.A. CV–98–AR–881–M.

United States District Court, N.D. Alabama, Middle Division.

May 4, 1998.

Ralph K. Strawn, Jr., Henslee Robertson & Strawn, L.L.C., Gadsden, AL, for plaintiff.

Thomas B. Leonard, III, Birmingham, AL, for defendants.

### MEMORANDUM OPINION

ACKER, District Judge.

Plaintiff, Gadsden Board of Education ("Board"), initially brought the above styled action in the Circuit Court of Etowah County, Alabama, seeking a temporary restraining order ("TRO"), a preliminary injunction, and a final injunction authorizing it to suspend or remove from school the minor defendants, B.P. and L.H., who currently receive special education services from the Board under the Individuals With Disabilities In Education Act ("IDEA" or "Act"). 20 U.S.C. § 1400 *et*

*seq.* Despite its earlier request for injunctive relief, which was granted by the state court in the form of a TRO and a preliminary injunction, the Board currently seeks a declaration that this case is moot. (Pl.'s Mot. For Order Declaring Case Moot (Doc. 5), April 22, 1998). Defendant Wayne Watts ("Watts"), who is acting "as a parent of" the two minor defendants, pursuant to 34 C.F.R. § 300.13,[1] removed the case to this court.[2] Watts opposes a declaration that the case is moot. He asks that this court order the school board to exhaust administrative remedies before seeking judicial relief in this and future IDEA cases. (Defs.' Objection (Doc. 6)) The court heard oral arguments on April 24, 1998. Subsequently, it has decided to: 1) deny the Board's motion to moot the above captioned action, and 2) decline Watts's invitation to issue an order requiring exhaustion in all Gadsden Board of Education IDEA cases. In accordance with the parties' stipulated agreement, the current preliminary injunction will remain in effect unless and until a party seeks and obtains a dissolution of that injunction.

## I. FACTS

The present dispute arose after a March 10, 1998, incident involving the two fourteen year old mentally retarded defendants.[3] The students' classroom teacher, Karla H. White ("White"), was present in the classroom on the date in question when the students began "yelling, cursing, calling other students names, rolling around the room in the office chairs, spraying Lysol and perfume, turning over chairs, and going through ... desk drawers...." (White Aff.) When the students would not obey her commands to behave, White requested that the Director of

the school, Larry Weathers ("Weathers") help her evacuate the other students. (White Aff.) After the evacuation, B.P. and L.H. began directing their attention to each other. (White Aff.) They began fighting, destroying school property, and throwing items found in the classroom, including crayons, staplers and Coca–Cola cans. (White Aff.) The students dumped everything from White's desk on to the floor, broke a glass candy jar, and began threatening to cut each other with the glass. (White Aff.) The fight continued until two police officers escorted the students from the room. (White Aff.; Weathers Aff.) During the disturbance, B.P. used profane words and threatened to bring a gun to school and shoot White. (White Aff.) L.H. told White and Weathers that she did not have to do what the adults told her to do because they "couldn't do anything to her." (White Aff.) Likewise, B.P. stated that "no one could touch him or do anything to him." (White Aff.)

Because of this incident, the Board suspended both students for three days. (Weathers Aff.) According to White, the students had caused similar disturbances in the past. (White Aff.) Consequently, the Board had suspended the students from school on various occasions, for at least six days each. (Compl. at ¶ 5.)[4]

## II. PROCEDURAL HISTORY

On March 12, 1998, two days after the classroom incident, the Board sought a TRO, a preliminary injunction, and a final injunction authorizing it to suspend or remove B.P. and L.H. from school. The state court judge entered a TRO for ten days and set a preliminary injunction hearing date for March 19,

---

1. During a hearing held on April 24, 1998, counsel for defendants indicated that Watts is not the legal guardian for either minor, notwithstanding the Board's complaint which names Watts as the minors' "alleged legal guardian." Instead Watts is the former executive director and presently a consultant to the agency where the minors live. Because Watts is legally responsible for the minors, he is therefore an appropriate legal representative for them under the IDEA. *See* 34 C.F.R. § 300.13 note (1997) ("The term 'parent' is defined to include persons acting in the place of a parent, such as ... persons who are legally responsible for a child's welfare.").

2. The Board has waived any procedural defects which may have been associated with the removal.

3. The court presumes that the students are mentally retarded only because they reside at a group home for persons suffering from mental retardation. (*See* Compl. at ¶ 3.)

4. Defendants do not dispute the facts as alleged by the Board or as reflected in the Board's affidavits. (*See* Defs.' Objection (Doc. 4) ¶ 3.)

1998. In addition, the judge appointed a separate guardian ad litem for each of the students, who are not siblings.

On the morning of March 19, the Board, Watts, and both guardians ad litem entered into a written agreement to remove the students from the Gadsden school system. The parties also signed a stipulated order for a preliminary injunction prohibiting the students from returning to any Gadsden school pending further order of the court. (Doc. 7.) Consequently, the judge entered a preliminary injunction and fixed a bond, which the Board posted, thereby making a preliminary injunction hearing unnecessary.

Despite the apparent agreement between the parties,[5] on April 13, 1998, the defendants removed the case to this court based on federal question jurisdiction and filed an objection to the Board's demand for injunctive relief. See 20 U.S.C. § 1415(i)(3) ("The district courts of the United States shall have jurisdiction of actions brought under [the IDEA] without regard to the amount in controversy.") Defendants argued that the 1997 amendments to the IDEA require that the Board exhaust all administrative remedies prior to seeking judicial intervention. Therefore, argued the defendants, the Board's original request for injunctive relief was premature. The Board responded by filing its current motion to declare the controversy moot in light of the stipulated preliminary injunction.

Watts opposes the Board's motion, arguing that the present dispute is "capable of repetition, yet evading review." Consequently, he asks this court to require that the Board exhaust its administrative remedies before seeking judicial intervention, at least in this case, if not in all future IDEA cases. Rather than file a counter-claim seeking such relief, Watts made his request orally at the April 24 hearing. In an effort to resolve this potentially re-occurring controversy swiftly, the court took the motion under consideration without requiring that Watts file a counter-claim.

## III. THE IDEA FRAMEWORK

Under the IDEA, children with disabilities are entitled to "a free appropriate public education which emphasizes special education and related services designed to meet their unique needs...." 20 U.S.C. § 1400(d). In order to meet the "unique needs" of the child, the IDEA

> provides procedural safeguards to permit parental involvement in all matters concerning the child's educational program and allows parents to obtain administrative and judicial review of decisions they deem unsatisfactory or inappropriate. Under this scheme of procedural protections, parents are entitled to ... an opportunity for an "impartial due process hearing" with respect to any [complaints about the child's Individualized Educational Program ("IEP"). § 1415(f)(1) ]. In the event that a party is dissatisfied with or aggrieved by the findings and decisions made after the impartial due process hearing, that party may obtain additional administrative review by the state educational agency. [§ 1415(g) ]. If that party is still dissatisfied or remains aggrieved after the administrative appeal, a judicial review is available in either state court or federal court to contest the decisions of the educational agency. [§ 1415(i)(2) ].

N.B., by D.G. v. Alachua County Sch. Bd., 84 F.3d 1376, 1378 (11th Cir.1996) (citations omitted), cert. denied, —— U.S. ——, 117 S.Ct. 769, 136 L.Ed.2d 715 (1997). Pending the outcome of any proceedings initiated under the IDEA, Section [1415(j) ] "creates a presumption in favor of the child's current educational placement...." Honig v. Doe, 484 U.S. 305, 328, 108 S.Ct. 592, 606, 98 L.Ed.2d 686 (1988) (formerly § 1415(e)(3)) (emphasis supplied).

Section 1415(j) is alternatively referred to as the "pendent placement provision," Susquenita Sch. Dist. v. Raelee S., by and Through Heidi S., 96 F.3d 78, 80 n. 1 (3rd Cir.1996), the "status quo provision," J.B. v. Killingly Bd. of Educ., 990 F.Supp. 57, 68 (D.Conn.1997), or the "stay-put provision" of the IDEA. Honig, 484 U.S. at 308, 108 S.Ct.

---

**5.** Defendant Watts does not deny that his signature appears on the agreement removing the students from the Gadsden school system and imposing a preliminary injunction.

**1302**

at 596. The "stay-put provision" creates a "presumption in favor of the child's current educational placement which school officials can overcome only by showing that maintaining the child in his or her current placement is substantially likely to result in injury either to himself or herself, or to others." *Id.* Assuming the school district can make such a showing, it is entitled to obtain a court order enjoining the child from attending the school in question, pending the outcome of any proceedings initiated under the Act. *See id.* at 327–28, 108 S.Ct. at 606.

## IV. THE MOOTNESS ISSUE

■ Pursuant to *Honig v. Doe,* the Board sought an injunction in the present case claiming that B.P. and L.H. were "substantially likely" to injure themselves or others. *See id.* at 328, 108 S.Ct. at 606. In response, defendants first argued that issuance of injunctive relief was premature because the Board had failed to exhaust its administrative remedies. Defendants pointed out that, under the IDEA's 1997 amendments, the plaintiff may seek an expedited hearing authorizing the temporary removal of a student where continued enrollment is "substantially likely to result in injury to the child or to others." § 1415(k)(2)(A); § 1415(k)(7)(C). Given the availability of an expedited hearing, the defendants argued that the school district had an obligation to seek such a hearing before attempting to obtain judicial relief. *See N.B.,* 84 F.3d at 1378 (noting that "The philosophy of the [IDEA] is that plaintiffs are required to utilize the elaborate administrative scheme established by the [IDEA] before resorting to the courts to challenge the actions of the local school authorities.") (alterations in original) (citations omitted).

After defendants filed their objection to the Board's request for a permanent injunction, the Board filed its current motion to have the present controversy declared moot. The Board argues that both a permanent injunction and exhaustion, in the form of an expedited hearing, are unnecessary in the present case. As a result of the agreement and injunction, the student defendants are now involved in a "homebound program."

(Doc. 5 ¶ 2.) The Board argues that, because the students no longer pose a substantial threat of injury or harm to their classmates, a permanent injunction is unnecessary, and that an expedited hearing is unnecessary for the same reason. Additionally, the Board points out that the educational reassignment occurred with the consent of the parties, thereby negating the need for *any* due process hearing, whether expedited or not. Accordingly, the Board argues that the exhaustion question, along with the present controversy, is moot.

However, the court is concerned that the Board requests a judicial resolution it does not, in fact, wish to obtain. Should the court grant the Board's motion to the moot this case, not only would this controversy cease to exist, but the preliminary injunction would also vaporize. During the April 24 hearing, the court expressed this concern and the Board clarified that it seeks an order declaring that the exhaustion question is moot, but reaffirming the preliminary injunction presently in effect.

The court agrees that the exhaustion question is not *currently* implicated in the present case. Under the IDEA, a parent or guardian has the right to challenge changes in the child's placement or IEP. § 1415(f)(1); § 1415(b)(6). Once the educational body receives a complaint about the proposed change, the parent/guardian is entitled to an administrative due process hearing to resolve the complaint. *Id.* However, if the parent/guardian fails to object to the proposed change, in either the IEP or educational placement, then the administrative hearing process does not commence. In the present case neither Watts, nor the natural parents, nor the guardians ad litem have complained about the new educational placement. Consequently, the administrative hearing process is not yet implicated.

While the mutually agreed upon change in the defendants' educational placement *temporarily* mooted the exhaustion question, Watts is not content to leave matters as they currently stand. Despite his acquiescence to the new educational placement and the preliminarily injunction, Watts is concerned that, in the future, the Board may again seek

judicial relief against B.P. and L.H. before attempting to obtain an expedited hearing. Therefore, Watts requests that this court order the Board to obtain an expedited hearing before seeking judicial intervention to prevent B.P. and L.H. from attending school. Such an order is appropriate, argues Watts, because the conduct which gave rise to the current controversy is "capable of repetition, yet evading review." *See Honig,* 484 U.S. at 318, 108 S.Ct. at 601 (citation omitted). Indeed, during the April 24 hearing, counsel for Watts admitted that defendants would like for the proposed order to apply not only in the present case, but in all the Board's future IDEA cases.

The court is persuaded that the current controversy is "capable of repetition, yet evading review" and, therefore, not moot. While courts are ordinarily "unwilling to assume that the party seeking relief will repeat the type of misconduct that would once again place him or her at risk ...., [n]o such reluctance ... is warranted here." *Id.* at 320, 108 S.Ct. at 602. Like the students in *Honig,* it appears that the students in the present case are incapable of controlling their aggressive and impulsive tendencies. *See id.* at 320, 108 S.Ct. at 602. Should B.P. and L.H. return to school, it is likely that they would continue creating a substantial risk of harm. Consequently, "there is a 'reasonable expectation' that [the students] would once again be subjected to ..." an effort by the Board to enjoin their attendance at school. *See id.* at 319 – 20, 108 S.Ct. at 602 (citations omitted). Thus, as in *Honig,* the exhaustion issue is likely to resurface in the present case.

## V. THE EXHAUSTION REQUIREMENT

■ Exhaustion is not required where available administrative remedies would prove either futile or *inadequate.* *Honig,* 484 U.S. at 327, 108 S.Ct. at 606 (citations omitted). Applying this rule, the *Honig* court recognized that the lengthiness of the pre–1997 IDEA administrative process made

such proceedings inadequate, where a school district sought to promptly enjoin a dangerous child from attending school. *Id.* ("[W]e have no reason to believe that Congress meant to require schools ... to exhaust in all cases, no matter how exigent the circumstances."). Therefore, held the Court, district courts have the authority to entertain requests for an injunction in IDEA cases, even where the moving party has failed to exhaust. *Id.* at 327, 108 S.Ct. at 606 ("The stay-put provision in no way purports to limit or pre-empt the authority conferred on the courts by [§ 1415(i)(2)–(i)(3) ] indeed, [these provisions] say[ ] nothing whatever about judicial power.") (formerly § 1415(e)(2)).

On the other hand, because the present version of the IDEA contains a mechanism for an expedited hearing, Watts argues that *Honig* is no longer applicable in IDEA cases. This argument is unpersuasive for several reasons. First, the expedited hearing provision provides that school personnel *"may"* seek an expedited hearing if they "maintain that it is dangerous for the child to be in the current placement...." § 1415(k)(7)(C) (emphasis supplied). Congress's use of the permissive term "may" indicates that resort to such a hearing is optional. The statute does not *require* that school personnel seek an expedited administrative hearing when attempting to remove a dangerous student from the classroom.

Second, although the parties in the present case were able to convene the defendants' IEP committee and reach an agreement upon short notice, such a rapid response is not the norm. *(See* Doc. 5 at ¶ 1). From the arguments presented at the April 24 hearing, it appears that an expedited hearing has never occurred in the Gadsden school system.[6] Consequently, it is unclear whether an expedited hearing procedure is currently available in the Gadsden school system.

Even if an "expedited hearing" is available, there is no guarantee that such a hearing would or could actually occur *expeditiously.* The statute does not supply a time period by which such hearings must occur, nor does it

---

**6.** The 1997 amendments only became effective on June 4, 1997 and the proposed administrative regulations have not yet been implemented. Dix-

ie Snow Huefner, *The Individuals With Disabilities Act Amendments of 1997,* 122 Ed.Law Rep. 1103, at * 1 (1998).

supply a time period by which a decision must be rendered. *See* § 1415(k)(7)(C). If the proposed administrative regulations are promulgated this summer, as expected, Huefner, *supra* at * 1, expedited due process hearings would have to "result in a decision within 10 business days of the request for the hearing, unless the parents and school officials otherwise agree." Notice of Proposed Rulemaking, 62 Fed.Reg. 55026, 55104 (1997) (to be codified at 34 C.F.R. § 300.528(a)(1)) (proposed October 22, 1997). Even if these proposed regulations take effect, however, the unique circumstances surrounding a particular case may still make an expedited hearing inadequate. In some cases, such as the instant case, school officials may need immediate authority to enjoin a child who is scheduled to return from a suspension in less than twenty-four hours. Under such circumstances, the proposed ten day period would certainly prove inadequate.

Finally, the position taken by the Department of Education's ("DOE") Office of Special Educational Programs ("OSEP") supports the conclusion that, even under the IDEA's 1997 amendments, there is no per se exhaustion requirement. OSEP took the position that "the agency, under the authority of *Honig v. Doe*, [can] still seek a temporary restraining order or injunction from a court," even in the face of the new expedited hearing provision. Huefner, *supra*, n. 28. While the DOE failed to codify the OSEP position, the proposed regulations certainly do not take the opposite approach. *See* Huefner, *supra*, n. 28; 62 Fed.Reg. 55026.

Although the court was unable to find any legal precedent directly on point, the court concludes that exhaustion is not a per se requirement under the 1997 amendments to the IDEA. In support of this conclusion, the court relies upon: 1) the plain language of the expedited hearing provision, 2) the reality that an "expedited" governmental hearing may, under some circumstances, prove inadequate or futile as described in *Honig*, and 3) the position taken by the DOE's Office of Special Education Programs.

## VI. CONCLUSION

Based on the foregoing, the court finds that the Board's motion to moot the current

action should be denied. However, pursuant to the parties' stipulated agreement, the preliminary injunction shall remain in effect indefinitely.

A separate appropriate order will be entered.