Mark CURRERI, Plaintiff, Appellee,

v.

**INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS, LOCAL 251, Defendant, Appellant.**

No. 83–1036.

United States Court of Appeals,
First Circuit.

Argued Aug. 2, 1983.
Decided Nov. 15, 1983.

Richard M. Pierce, Providence, R.I., with whom Roberts, Carroll, Feldstein & Tucker, Incorporated, Providence, R.I., was on brief, for defendant, appellant.

Guy J. Wells, Providence, R.I., with whom Gunning, LaFazia & Gnys, Inc., Providence, R.I., was on brief, for plaintiff, appellee.

Before CAMPBELL, Chief Judge, BOWNES, Circuit Judge, and PEREZ–GIMENEZ,* District Judge.

LEVIN H. CAMPBELL, Chief Judge.

Mark Curreri, plaintiff-appellee, filed tort actions in federal district court against Local 251 of the International Brotherhood of Teamsters, defendant-appellant, and Michael Rasco, James Pina and Robert Savoie. Curreri sought damages for injuries suffered when a rock struck him in the head as he crossed a picket line. Jurisdiction was based on diversity under 28 U.S.C. § 1332.

At the trial the following facts appeared. Local 251 sought recognition as the collective bargaining agent for some of Peterson/Puritan Corporation's employees. When the corporation failed to recognize the union, truck drivers, warehousemen and mechanics of Peterson/Puritan struck for recognition of the union and began picketing at their employer's Cumberland plant. Tarmarck Truck Rentals, an independent contractor, employed Curreri and instructed him to make a series of deliveries to the Cumberland plant. As Curreri drove a trailer truck in a convoy with other vehicles into the plant, a rock hit him in the head. Curreri did not see who threw the rock. Apparently the union business agent, James Boyajian, was not present on the picket line at the time of the incident. Appellee received first aid in the plant yard and later underwent surgery for a depressed skull fracture. He missed several weeks of work.

Curreri voluntarily dismissed the complaint against Michael Rasco prior to trial, and on his motion the case against James Pina and Robert Savoie was consolidated with the case against Local 251. At the close of plaintiff's case, the court granted James Pina's motion for a directed verdict, but denied the motions of Local 251 and Robert Savoie. The jury returned a verdict for Robert Savoie, but against the union for $18,000 in compensatory damages. The court denied Local 251's motion for a judgment notwithstanding the verdict.

The union complains that the district court erred by not granting its motions for directed verdict and judgment n.o.v.; it also complains that the court improperly excluded the testimony of its business agent, James Boyajian, concerning the instructions he gave strikers about appropriate picket line conduct.

We affirm the district court's denial of the union's motions for directed verdict and for judgment n.o.v.; however, we hold that the court committed reversible error by ex-

* Of the District of Puerto Rico, sitting by designation.

cluding the union business agent's testimony about the instructions he allegedly gave strikers. We therefore vacate the judgment and remand for a new trial.

## I.

A plaintiff's burden in seeking to establish the liability of a defendant labor union for injuries arising out of picket line violence is higher than the standard civil burden of proof by a preponderance of the evidence. Section 6 of the Norris-LaGuardia Act, 29 U.S.C. § 106 provides:

No officer or member of any association or organization, and no association or organization participating or interested in a labor dispute, shall be held responsible or liable in any court of the United States for the unlawful acts of individual officers, members, or agents, except upon *clear proof* of actual participation in, or actual knowledge of, such acts, or of ratification of such acts after actual knowledge thereof. [Emphasis supplied.]

The Supreme Court has held explicitly that section 6 applies to federal court adjudication of state tort claims arising out of labor disputes, *United Mine Workers v. Gibbs,* 383 U.S. 715, 737, 86 S.Ct. 1130, 1144, 16 L.Ed.2d 218 (1966). While no doubt exists that a plaintiff must meet a higher burden to establish union liability, the standard for granting a directed verdict and a judgment n.o.v. is also clear.

The standard of review that applies to a refusal to direct a verdict in favor of a defendant is well established. A verdict should be directed only where the evidence could lead reasonable men to but one conclusion. This determination is to be made without evaluating the credibility of the witness or considering the weight of the evidence. *Harrington v. United States,* 504 F.2d 1306, 1311 (1st Cir.1974). The same review standard applies to a refusal to grant a motion for judgment n.o.v. The evidence and any reasonable inferences therefrom are to be reviewed in the light most favorable to the nonmoving party. *Rios v. Empresas Lineas Maritimas Argentinas,* 575 F.2d 986, 989 (1st Cir.1978).

*deMars v. Equitable Life Assurance Society,* 610 F.2d 55, 57 (1st Cir.1979). Even though Curreri must meet a higher burden to prove union liability, the evidence introduced at trial does not lead inevitably to the conclusion that Local 251 was not liable under the "clear proof" standard. The evidence shows that the union business agent was organizing the picket line activity, and that a series of violent acts took place, including repeated rock throwing and the spreading of objects on the road outside the plant designed to puncture the tires of delivery trucks. On at least one occasion a 55-gallon drum was thrown under the appellee's truck tires. Further, the union promptly posted bail for strikers committing these violent acts. A jury could reasonably have inferred that continuing union support for strikers despite a pattern of violence during picket line activity organized by the union, coupled with overt aid to accused troublemakers, demonstrated acquiescence or approval of the violence. We conclude, therefore, that the evidence was sufficient to survive motions for directed verdict and for a judgment notwithstanding the verdict.

## II.

During the trial the union attempted to introduce the testimony of its business agent, James Boyajian, concerning the instructions he gave workers on the first day of the strike. Counsel for Curreri objected on hearsay grounds.

Q  Whose decision then was it to actually strike at Peterson-Puritan?

A  The people at Peterson-Puritan.

Q  And did you meet with those people at anytime once the strike had occurred to discuss with them picket line activity?

A  Yes.

Q  When did those meetings or meeting occur?

A  Well, the first day of the strike when they went out, I went up to explain to them, I gave them signs. They had no signs when they first went out. I gave them Teamsters Local 251 on strike. Even though they weren't members, we were seeking to bring them into the

union, and I explained to them the conduct.

MR. WELLS: I object to what he said.

THE COURT: On the basis of what, hearsay?

MR. WELLS: Yes.

After the jury had been excused, the court asked Bovajian to tell it what instructions he had given the strikers, and he summarized his instructions as follows:

A What I did was explain to them the law regarding their responsibility. I explained to them their rights, that each vehicle coming onto the property under the state law was not to drive right through, they're suppose to stop. I also explained to them don't lay down under any wheels. I don't want any heroes here, you know, getting run over. I said to them be very careful of any violence. You have a right to shout scab, et cetera, but I said you do not have a right to stop the vehicle and not let it proceed. I said if you do have violence on the line, which I do not want, I cannot condone, I said they will get a restraining order, temporary restraining order, an injunction, you'll be down to two or three pickets, you'll be ineffective, and I went on to tell them that they could set it up any way they wanted regarding who picketed on what day or what hour or whatever, and the general, you know, handing out of—I put nobody in charge in particular, although Michael LaPlante said give me the on-strike signs, I'll hand them out to the people that's going to be on the different shifts.

The court said that it would "think it over" and then recessed until the following morning. When court resumed, counsel for the union presented his legal theory under which the statements of Boyajian were admissible.

THE COURT: At the end of the day yesterday—you got something to enlighten me?

MR. PIERCE: Yes, I believe I do, your Honor, and I believe the answer to the question is that the testimony is not hearsay because it constitutes a verbal act,

essentially; that the whole thrust of the plaintiff's case is that the union did something, that is either participate in this conduct or ratify it, and in fact, this testimony describes the conduct of the union official who was involved in this matter as to what he did with regard to the picket line activity, and I would cite McCormick on Evidence Section 249 describing the fact that such conduct, such testimony when it essentially describes conduct, does not constitute hearsay evidence because it's not presented for the truth of the statement, but essentially an operative fact in the case. The conduct—

THE COURT: The fellow who said it's raining in London, not to prove that it was raining in London but to prove that he said it was raining in London.

MR. PIERCE: Yes.

Counsel for the union apparently convinced the court that Boyajian's statements could be introduced as evidence that certain statements were made, but not to prove the truth of the statements. However, the court expressed concern that a proper foundation be laid before the statement went in.

THE COURT: It seems to me there is a preliminary question here as to when and where the statement was made and who was present, and that that had something to do with whether or not, to begin with, the testimony is admissible in this case. I am, if you get to the point of the testimony, I am prepared to admit it as evidence suggesting the fact that certain things were said. . . .

The union thereafter attempted to introduce the evidence of Boyajian's purported instructions, but the court at first sustained a general objection. Following a bench conference, the union counsel asked Boyajian whether Robert Savoie was present on the picket line when he gave his instructions. Boyajian answered, "I believe he was." Boyajian was then asked again to repeat the instructions he had given the strikers, and the court overruled an objection on hearsay grounds. However, counsel for the union did not immediately direct Boyajian to answer the question; instead he withdrew the question and went about

**10**

establishing more of a foundation. During this further examination Boyajian revealed that he could not be absolutely certain that Savoie was present when he gave the instructions.

When union counsel finished laying this additional foundation, he again asked Boyajian to tell the jury what instructions he had given the strikers. This time the court sustained a general objection.[1]

Later, the union counsel tried to introduce into evidence both the instructions that Boyajian had given on the first day of the strike and the instructions he had given after the rock throwing incident that resulted in Curreri's injury. The court flatly stated, contrary to its earlier indication, that "[w]hatever you told them the first day, Mr. Boyajian, is not admissible in evidence." The court also refused to admit testimony concerning what Boyajian told strikers after the incident despite its previous indication that it would allow such testimony.

Q Did you say anything at that point when you called the picketers together with regard to the incident that had

occurred on the previous Friday, yes or no?

A Yes.

Q And did you give any instructions at that point with regard to picket line activity?

A Yes.

THE COURT: Mr. Wells, are you objecting?

MR. WELLS: Yes.

THE COURT: I am going to allow that question.

. . . . .

Q Mr. Boyajian, simply tell me or tell the jury what you told the people with regard on this occasion, the Monday after the incident with regard to picket line conduct?

A I went in the morning—

MR. WELLS: I object.

THE COURT: Sustained.

The record reveals that the court explicitly considered only two grounds for excluding the testimony. First, counsel for Curreri initially objected to the testimony on hearsay grounds, and the only other time he stated a basis for an objection he identified

---

1. Q What did you—did you give the persons that were there any instructions with regard to picket line conduct?
A Yes.
Q And what were those instructions?
MR. WELLS: I object.
THE COURT: Sustained.
MR. PIERCE: Your Honor, may we approach the bench?
[Bench Conference]
Q Mr. Boyajian, do you know whether Robert Savoie was present on the picket line during this first meeting?
A I believe he was.
Q And again I would ask you what instructions did, if any, did you give at this time to the persons who were present regarding picket line activity?
MR. WELLS: I object. Hearsay.
[Bench Conference]
THE COURT: Overrule the objection.
MR. PIERCE: Could I take a moment to talk with the witness, your Honor?
THE COURT: All right. Why don't you just step down there, Mr. Boyajian.
[Witness conferring with Mr. Pierce]
Q Now, Mr. Boyajian, do you know for certain—
THE COURT: You're withdrawing that other question?

MR. PIERCE: Yes, your Honor.
THE COURT: All right.
Q Do you know for certain that Mr. Savoie was present at the time of this meeting that you've described?
A I believe I said there were approximately 40 people in the bargaining unit. I knew no one by name. The only person I actually knew by name that I was positively absolutely certain that was there would be Michael LaPlante. I knew nobody else by name.
Q Well, do you know for certain that Mr. Savoie was present at this meeting?
A I can't say for certain he was there because I didn't know him.
Q Do you know for certain whether everyone who was present heard the instructions that you gave?
A I gave the instructions. I spoke in English. If each and every person heard it, I don't know. I can't absolutely say what they did. I gave the instructions to the entire group.
Q And what were the instructions that you gave?
MR. WELLS: I object.
THE COURT: Sustained.

hearsay as the reason. Second, the court raised its own concern that a prerequisite to admitting the testimony was some showing as to when, where, and to whom the instructions were given.

■ The record suggests that the court did not exclude the testimony on hearsay grounds as it was prepared to admit Boyajian's instructions to show that certain things were said. Further, when the specific objection of hearsay was raised, the court overruled the objection. To have excluded the testimony on hearsay grounds would have been clear error. The Federal Rules of Evidence define hearsay to include only those statements "offered in evidence to prove the truth of the matter asserted." Fed.R.Evid. 801(c). Statements can be introduced to show the fact that certain things were said even though the same statements could not be introduced to prove the truth of the matter asserted. *See, e.g., United States v. Ciampaglia,* 628 F.2d 632, 643 (1st Cir.1980); *NLRB v. Koch & Sons,* 578 F.2d 1287, 1290–91 (9th Cir.1978); *see generally* McCormick, *Evidence* §§ 246, 249 & n. 78 (1972); 6 Wigmore, *Evidence* § 1766 (Chadbourn rev. 1976). The distinction is between statements *qua* assertions and statements *qua* conduct. In this case the crucial issue, as defined in section 6 of the Norris-LaGuardia Act, is the union's conduct: did the union participate in, have actual knowledge of, or ratify the unlawful acts?

■ To show that it did, the plaintiff could introduce evidence that union officers had engaged in violent conduct or incitement to violence. By the same token, the union could attempt to show its lack of participation, knowledge or ratification by presenting evidence of inconsistent conduct by its agents. If, for example, an officer

had intervened to prevent the throwing of a rock, this would clearly be material. By the same token, instructions not to engage in violence, delivered to strikers before and after the incident by a prominent official such as the business agent, was probative on the subject of the union's condonation and ratification of the violence.

The question under section 6 of the Norris-LaGuardia Act is less that of the union's "intent" than whether it objectively manifested its approval—or disapproval—of the violent acts, and thus either involved itself in them or ratified them. The nature of the communication between the union representative and the strikers is, therefore, an operative fact in the case. Quite apart from whether the statements of Boyajian that "the union does not condone violence" could be introduced for their truth to prove union intent or policy, *see* Fed.R.Evid. 803(3), they could clearly be introduced as evidence of conduct inconsistent with actual participation, knowledge or ratification.[2] Thus, the testimony of Boyajian concerning his instructions to strikers both before and after the incident should not have been excluded on hearsay grounds, if that was the basis for exclusion.

The record shows that the more likely ground on which the court ruled to exclude the evidence was its belief that a proper foundation had not been laid to demonstrate the proposed testimony's relevance. Before Boyajian testified that Savoie was present when he gave the instructions, the court excluded the evidence. After Boyajian testified that he believed Savoie was present, the court was willing to allow the testimony. When subsequent direct examination revealed that Boyajian could not be sure that Savoie had been present, the court again ruled to exclude the evidence.

---

2. *See, e.g.,* 6 Wigmore, *Evidence* § 1766 (Chadbourn rev. 1976).

What here remains, then, is to distinguish and mark off the various classes of utterances which legally pass the gauntlet of the hearsay rule because it does not apply to them. The classes of utterances thus exempt may be grouped under three heads:

1. Utterances material to the case as a *part of the issue* . . . .

*See also* Fed.R.Evid. 801(c) Advisory Committee note (the effect is to exclude from hearsay the entire category of "verbal acts" and "verbal parts of an act," in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights).

If Savoie's presence, or the presence of any other particular individual, on the picket line was crucial to the relevance of the instructions given, then the district court could have properly excluded based on his absence. The issue is not, however, whether the union effectively communicated to Savoie its disapproval of violence; rather, the issue is whether the union approved of or ratified a course of violent acts. Clearly certain union actions taken outside the presence of Savoie might have been relevant to the question of approval or ratification.

■ Boyajian testified that he met with approximately 40 men of the Peterson/Puritan plant at the gate on the morning of the first day of the strike and that he passed out picket signs. It was to this group that he gave the instructions. At trial, Boyajian clearly identified the time and place at which he gave the instructions and to whom he gave them.[3] Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the action more probable or less probable than it would be without the evidence." If a jury believed that the union instructed the men on the picket line to avoid violence, then the jury could reasonably conclude that it was less likely that the union planned, approved, or subsequently ratified violent action. Indeed, conduct aimed at preventing violence is inconsistent with conduct promoting or ratifying violence. To the extent that the court desired a preliminary showing of relevance, the condition was satisfied by Boyajian's preliminary testimony. Thus, to the extent that the court excluded the evidence

for lack of a proper foundation, the court was in error.

We have canvassed the Federal Rules of Evidence and find no other basis on which this testimony could have been properly excluded. Nevertheless, a finding that evidence was improperly excluded does not end the matter. Rule 103 provides in relevant part,

(a) **Effect of erroneous ruling.** Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and . . .

(2) **Offer of proof.** In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

Here, a substantial right of the union was affected because it was not allowed to give its own testimony concerning relevant pre-incident instructions and only limited testimony regarding post-incident instructions. Boyajian's purported utterances were relevant conduct tending to show lack of union participation, approval and ratification. Because this is the central issue in the case, fleeting references to a part of these instructions elsewhere in the record does not cure the incorrect ruling to exclude, nor does less forceful testimony of the same tenor by another witness.[4] The union's ability to prove its lack of liability was substantially impaired. Thus, the condition of Rule 103(a) was met. The condition of Rule 103(a)(2) was also met because Boyajian himself told the court the substance of his testimony concerning the instructions.

---

3. The union also sought unsuccessfully to introduce Boyajian's testimony that he gave similar instructions to unnamed strikers on the picket line a few days after the incident. *Supra.*

4. Boyajian testified without objection that, after the rock throwing incident, he told strikers the union was "considering withdrawing our organizational drive because of . . . their conduct on the line Friday . . . if there was any repercussions of it . . . ." Also, Michael Rasco

who had been one of the strikers testified that Boyajian had told them "to keep up the good work" and that he understood this to mean "[t]o carry out a strike function the way it is suppose[d] to be carried out, without doing bodily harm to anybody . . . ." Rasco's testimony was clearly less forceful than Boyajian's, however, and Rasco was apparently discredited by the jury insofar as he testified that defendant Savoie had thrown the rock, for the jury rendered a verdict in favor of Savoie.

Mere compliance with Rule 103 may, in some situations, be insufficient to preserve for appeal the issue whether evidence was properly excluded. Prior to the enactment of the Federal Rules of Evidence, we held in *Subecz v. Curtis,* 483 F.2d 263, 266 (1st Cir.1973), that "beyond presenting and arguing a point, an objecting party has a further duty to make clear, after the ruling, that he is still pressing the point. [Citation omitted.] Otherwise, unaware of the party's continuing objection, the court is deprived of the opportunity, or at least any good reason, to reconsider its ruling." This principle has continued vitality under the Federal Rules of Evidence. *See Daskarolis v. Firestone Tire and Rubber Co.,* 651 F.2d 937, 940–41 (4th Cir.1981); *cf. Malbon v. Pennsylvania Millers Mutual Insurance Co.,* 636 F.2d 936, 941 (4th Cir.1980) (applying the duty in context of Fed.R.Civ.P. 39(b)).

While it would have been preferable for counsel for the union to have asked the court to clarify its rulings, and while the answer to such an inquiry would have made our job far easier, we cannot say that the union failed to meet the duty outlined in *Subecz.* Boyajian clearly summarized his proposed testimony for the court, and union counsel presented a theory under which this testimony was admissible. The union made numerous attempts to introduce the evidence until the court flatly stated that the testimony was not admissible. Counsel may have felt that further attempts to introduce the evidence would have annoyed the bench. Clearly the court had finally ruled on the point. Our system does not require that formal exceptions be taken to adverse rulings. Fed.R.Civ.P. 46. From the record it is clear that the union continued to disagree with the court's rulings.

*The judgment is vacated and the case is remanded for a new trial.*