Connolly, J.
The plaintiff, Frank A. MacKenzie, brought this tort action against several defendants who were involved in an incident that occurred during a strike by members of the International Brotherhood of Teamsters (IBT). One of the defendants, Local 25 of the IBT (“Local 25”), now moves for summary judgment.
BACKGROUND
The material facts, viewed in the light most favorable to the nonmoving party, are as follows:
The IBT declared a national strike against selected employers at midnight on April 4, 1994. Joseph Con-Ion, the secretary-treasurer for Local 25, told the union members at New Penn Motor Express (“New Penn”) that a strike had been called. He brought two of the union employees outside at some time between 2:00 a.m. and 3:00 a.m., and instructed them to picket. Conlon left New Penn at around 3:00 a.m., while two or three employees picketed.
The gates into New Penn were locked, and union employees who arrived later that morning for their scheduled shifts joined the picket line.
Lawrence Libby, a shop steward, took part in the picketing. Libby shouted some directions to the strikers (e.g., instructed them to hold the line, and not to let people in), but did not instruct the picketers to commit any violent acts. Libby was not designated to be in charge of the picket line. No officers from the IBT or Local 25 were present during the picket.
During the morning, there were approximately twenty to sixty picketers at the entrance to New Penn’s property. The picketers carried signs, and walked in a circle in front of the gate of New Penn’s parking lot when cars approached.
New Penn hired a detail of police officers to monitor the picketers. Officer Mackenzie, Sergeant Keith Weston, Officer Daniel Rosa, and other officers were at the scene. At one point during the morning, Sgt. Weston called the Billerica police and asked for additional officers to be sent. The record does not clearly show how many officers were present, but it appears that there were at least five officers in total.
The picketers obstructed traffic heading into the New Penn property. Some of the picketers shouted and cursed. In order to allow cars to move beyond the gate, the police officers attempted to form a human chain and clear a path through the picketers by pushing them back. The picketers pushed towards the cars, and as a result, the police officers and the picketers pushed against each other. There were about five police officers present.
At around 8:00 a.m., the officers attempted to allow several cars, including the car driven by Maguire, to move through the gate and onto New Penn’s property. *724 The officers directed the cars to move slowly through the crowd, following behind one of the officers, who was on foot. The cars inched forward at the officers’ direction.
Several picketers and police officers came in contact with cars that were attempting to pass through the gate. Some of the picketers hit or pounded on some of the cars with their hands. Maguire was at the front of the short procession of vehicles. One picketer rolled across the hood of Maguire’s car, and briefly obstructed Maguire’s view through the windshield. However, before Maguire’s car began to move again, the picketer was off the car, and Maguire had an unobstructed view.
At some time between 7:45 a.m. and 8:30 a.m., one of the officers attempted to direct Maguire to drive into the parking lot. Although Maguire thought that the officer was directing him to proceed, the officer actually was trying to indicate that Maguire should stop. Maguire accelerated, and struck Officer MacKenzie. Maguire did not notice that he had hit someone, and continued to drive. Several picketers and officers attempted to tell Maguire to stop his vehicle, and eventually were able to communicate to Maguire that he should stop. The picketers and other officers helped MacKenzie out of the way of the car. Maguire stopped and then proceeded to drive into the parking lot.
Officer Rosa spoke with Maguire, and issued him a citation for driving to endanger. Maguire was later acquitted of this charge. In his official report of the incident, Sgt. Weston concluded that, in his opinion, Maguire was driving too fast.
No other citations were issued to anyone at the scene of the incident, and no strikers were arrested. All cars that attempted to cross the picket line and drive onto New Penn’s property were able to get through.
DISCUSSION
Summary judgment shall be granted when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Good v. Commissioner of Correction, 417 Mass. 329, 332 (1994); Massachusetts Bay Transportation Authority v. Allianz Ins. Co., 413 Mass. 473, 476 (1992); Mass.R.Civ.P. 56(c). The moving party must demonstrate “by materials described in Mass.R.Civ.P. 56(c), unmet by countervailing materials, that the . . . [opposing party] has no reasonable expectation of proving an essential element of [his or her] case . . .” Brunner v. Stone & Webster Engineering Corp., 413 Mass. 698, 705 (1992). A party moving for summary judgment who does not bear the burden of proof at trial may demonstrate the absence of a triable issue either by submitting affirmative evidence negating an essential element of the nonmoving party’s case or by showing that the nonmoving party is unlikely to submit proof of that element at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991). “The nonmoving party cannot defeat the motion for summary judgment by resting on its pleadings and mere assertions of disputed facts ...” LaLonde v. Eisner, 405 Mass. 207, 209 (1989). Establishing the absence of a triable issue requires the nonmoving party to respond by alleging specific facts demonstrating the existence of a genuine issue of material fact. Pederson v. Time, Inc., 404 Mass. 14, 17 (1989).
“Summary judgment is seldom sought or granted in negligence actions.” Manning v. Nobile, 411 Mass. 382, 388 (1991). “Ordinarily, summary judgment is not an appropriate means to resolve negligence cases, because usually the question of negligence is one of fact.” Roderick v. Brandy Hill Co., 36 Mass.App.Ct. 948, 949 (1994). “However, a judge may decide the issue as a matter of law when no rational view of the evidence permits a finding of negligence.” Id.
In order to hold a union liable for the alleged tortious acts of its members, the fact-finder must find “clear proof of actual participation in, or actual authorization of, such acts, or of ratification of such acts after actual knowledge thereof.” G.L.c. 149, §20B. The “clear proof’ standard requires a level of proof in between the criminal standard of beyond a reasonable doubt and the preponderance of the evidence norm in civil trials. United Mine Workers of America v. Gibbs, 383 U.S. 715, 737 (1966).[2]
MacKenzie has not presented sufficient facts to demonstrate by the standard of clear proof that the union was responsible for the acts of the picketers. No officers of Local 25 or the IBT were present during the picketing, except for the brief appearance of Conlon. Although Libby was present, the plaintiff has not shown that the shop steward was clothed with any special authoriiy to direct the strikers, or that Libby served as the designated union presence at the strike.[3] Although he did shout some instructions to the picketers, this limited involvement is insufficient to demonstrate by clear proof that the union or its agents had control over the actions of the picketers.
The plaintiff has not demonstrated that any union officials had actual knowledge of the strikers’ actions. As noted, the only officer who was present during the picket had left the scene hours before the accident occurred. Conlon was present only for the presumably quiet picketing by two or three union members, and there is no evidence to show that Conlon or other officers returned to the picket line that day or were kept abreast of the conduct of the picketers.
Furthermore, even if there was obstruction, shouting, swearing, banging, etc. on the picket line, the plaintiff has not shown that any of this activity proximately caused his injuiy. The deposition testimonies of the plaintiff and Maguire indicates that Maguire made an error, and accelerated when he should have stopped. It is possible that he was upset or distracted *725 by the actions of the picketers. However, Maguire was part of a small group of vehicles that were inching along toward the gate and onto New Penn’s property. The distractions were not so great that, at this slow rate, Maguire could not concentrate well enough control his own vehicle. Even when viewing all the alleged facts in the light most favorable to the plaintiff, the court finds that there is not a sufficient nexus between the actions of the strikers, and Maguire’s actions when he accelerated his car and struck the plaintiff. Since the plaintiff has shown no evidence that demonstrates a causal relationship, which is one of the elements of negligence which the plaintiff would be required to prove at trial, summary judgment for Local 25 is appropriate.
ORDER
For the foregoing reasons, the defendant’s motion for summary judgment is hereby ALLOWED.

Case law interpreting the Norris-LaGuardia Act, 29 U.S.C. §106, upon which G.L.C. 149, §20B was modeled, provides guidance in interpreting the Massachusetts statute. Tosti v. Ayik, 394 Mass. 482, 487-88 (1985).

Liability upon unions has been imposed when unlawful activity was authorized or ratified by union business agents, representatives with general duties, or a representative who served as the designated union presence at a strike. See, e.g., Yellow Bus Lines, Inc. v. Drivers, Chauffeurs & Helpers Local Union 639, 883 F.2d 132, 137 (D.C. Cir. 1989); Curreri v. International Brotherhood of Teamsters, 722 F.2d 6, 8 (1st Cir. 1983); Charles D. Bonanno Linen Service, Inc., 708 F.2d 1, 11 (1st Cir. 1983), cert. denied, 464 U.S. 936 (1984). A union may be held liable for the actions of its shop steward on the scene to the extent that the steward is clothed with plenary authority to direct the strike on behalf of the union. Browne v. International Brotherhood of Teamsters, Local 851, 609 N.Y.S. 2d 237 (N.Y.App.Div. 1994) (applying a New York statute analogous to G.L.c. 149, §20B).