Henry v. Keene School District      CV-98-648-B    06/28/99   P

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


NORMAN AND SANDRA HENRY,
as parents and next friends of
MATTHEW HENRY, a minor

    **v.**                                                            **Civil No. 98-648-B**

**SCHOOL ADMINISTRATIVE UNIT #29**
**and KEENE SCHOOL DISTRICT**


**MEMORANDUM AND ORDER**


Matthew Henry is a sixteen year-old student with learning disabilities who has been determined by the Keene, New Hampshire, School District to be entitled to an Individualized Education Program ("IEP") pursuant to the Individuals With Disabilities Education Act ("IDEA"), 20 U.S.C.A. § 1400 et seq. (Supp. 1998). For three years prior to the commencement of the current school year, the School District paid for Matthew to attend the Linden Hill School, a residential school serving students aged 10-15 with language-based learning disabilities. In 1998, however, the School District developed a new IEP for Matthew (the "proposed

IEP") and decided to implement it at Keene High School. The Henrys challenged the proposed IEP and the public school placement by requesting a "due process" hearing before the New Hampshire Department of Education. Since the Henrys were unwilling to send Matthew to a public school and he was too old to remain at Linden Hill, they decided to enroll him at the Eagle Hill School, another private school that accepts older students with learning disabilities.

In this action, the Henrys seek a preliminary injunction requiring the School District and School Administrative Unit #29 to pay for Matthew to attend Eagle Hill during the Henrys' administrative challenge to the proposed IEP. They also seek reimbursement for the costs that they incurred in sending Matthew to Eagle Hill. The Henrys base their claim on 20 U.S.C.A. § 1415(i)(2)(B)(iii) (Supp. 1998), which authorizes a court to enforce the IDEA by awarding "such relief as the court determines is appropriate," and the IDEA's "stay-put" provision, which provides that

> during the pendency of any proceedings conducted
> pursuant to this section, unless the State or local
> educational agency and the parents otherwise agree, the
> child shall remain in the then-current educational
> placement of such child . . .

20 U.S.C.A. § 1415(j) (Supp. 1998). Defendants argue that the Henrys are not entitled to a preliminary injunction because they failed to administratively exhaust their stay-put claim. Alternatively, they claim that a preliminary injunction should not issue because the proposed IEP does not alter Matthew's "then-current educational placement." Finally, defendants assert that even if some form of provisional relief is warranted, the court should reject the Henrys' reimbursement claim.

As I explain below, I conclude that (1) the Henrys were not required to administratively exhaust their stay-put claim because any further attempt to do so would have been futile; (2) the Henrys are entitled to a preliminary injunction requiring the School District to fund Matthew's placement at Eagle Hill pending a ruling on the merits of their challenge to the proposed IEP; and (3) the School District must reimburse the Henrys for the costs they incurred in placing Matthew at Eagle Hill prior to the issuance of the injunction subject to a right to reimbursement for the entire cost of Matthew's placement if the proposed IEP is later proven to be adequate.

# I.

Matthew Henry suffers from attention deficit hyperactivity disorder and learning disabilities in language arts and math.[1] He was educated in the Keene Public Schools through the fifth grade. During his three middle school years, the School District paid for him to attend the Linden Hill School in Northfield, Massachusetts. The School District agreed to fund this placement because, after fifth grade, Matthew was scheduled to move from his public elementary school to a public middle school where the special education program had changed dramatically, was in its first year of operation, and could not meet Matthew's needs.

Matthew's last agreed-upon IEP, which was signed by his mother on October 21, 1997, provided the following description of the special education and related services he was to receive pursuant to the IEP:

> Matthew needs small group, modified instruction in all academic areas. He should receive instruction in reading, written language, and math from special educators in a setting where distractions are minimized and instruction can be individualized to meet his needs.

The IEP noted that Matthew was then attending Linden Hill but did

---

[1] The facts discussed in this section have been drawn from the parties' offers of proof and Matthew's IEPs for the 1997-98 and 1998-99 school years.

not specify that he must be placed at a private school.

Linden Hill is a boarding school for students aged 10 to 15 who are dyslexic or who have other language-based learning disabilities. It offers class ratios of 4-5 students per teacher and small group educational programs marked by multi-sensory teaching approaches tailored to meet the educational and social needs of its learning-disabled students. Students also are required to participate in daily extra-curricular, athletic, and social events that are conducted in highly structured settings geared to the special needs of learning-disabled children. Although Linden Hill was able to implement Matthew's IEPs during the past three school years, it is no longer an option for Matthew because he is too old.

The School District developed a new IEP for Matthew for the 1998-99 school year. The proposed IEP provided the following description of Matthew's suggested educational program:

> Matt will participate in a modified regular education and resource room program that provides instruction by special educators in small groups for English, math and vocational training with extensive accommodations in regular classes for related subjects. He will be provided one tutorial period per day. Matt will be given a formal vocational assessment (Micro Tower) and explore in an hands-on manner, a variety of vocational options. Matt will receive supplemental help in small group [sic] to reinforce subjects,

> facilitate success and develop independence
> through daily participation.

It also stated that Matthew would not participate in general education classes in math and English, that existing programs would be modified to provide him with small group study time, and that he would be allowed to take tests and obtain remedial instruction in a quiet, non-distracting setting.  It did not identify any special accommodations with respect to extra-curricular activities.

Although the proposed IEP did not specify a particular placement, the School District planned to implement the IEP at Keene High School.  Approximately 1500 students attend Keene High School.  Matthew would be required to change classes 6-7 times per day at his new placement.  He also would be required to attend some of his classes with as many as 18 other non-disabled students.  Unlike at Linden Hill, where his participation in specially-structured athletic, social, and other extra-curricular activities was mandatory and geared specifically to his needs, Matthew would not be required to participate in extra-curricular activities at Keene High School.

The Henrys challenged the proposed IEP, fearing that the School District was attempting to move Matthew into a public school setting too quickly.  In particular, they were concerned

-6-

that Matthew would not learn effectively in large classes with non-disabled students, would have difficulty changing classes in a large high school setting, and would suffer a loss of self-esteem if he were integrated too rapidly into the educational mainstream. Accordingly, rather than accept the School District's proposed IEP, the Henrys enrolled Matthew at the Eagle Hill School in Hardwick, Massachusetts - a boarding school for older students with language-based learning disabilities. Eagle Hill is fully capable of implementing Matthew's last agreed-upon IEP. The only relevant difference between Eagle Hill and Linden Hill is the age of students admitted.[2]

---

[2] Eagle Hill, unlike Linden Hill, is not accredited by the New England Association of Schools and Colleges or any other accrediting agency, nor has it been approved by the Commonwealth of Massachusetts as a special education school. See In re Matthew H., IDPH No. 98-040 (Feb. 2, 1999) at ¶ 77. This distinction is of no consequence to the resolution of this case, however, because the parents of a disabled child may obtain reimbursement for a private school placement in appropriate circumstances even if the private school is unaccredited. See Florence County Sch. Dist. Four v. Carter, 510 U.S. 7, 10 (1993) (holding that a court may order reimbursement for parents who unilaterally withdraw their child from a public school that provides an allegedly inappropriate education and place him in an unaccredited or uncertified private school as long as the school provides an education "otherwise proper under IDEA"); Still v. DeBuono, 927 F. Supp. 125, 131 (S.D.N.Y. 1996) ("IDEA permits reimbursement . . . where parents enlist trained teachers, who are not certified under the statute, to educate their children, as long as the parent-sponsored services are 'appropriate' and the state-sponsored services were not"), aff'd, 101 F.3d 888 (2d Cir. 1996); Board of Educ. of Oak Park & River Forest High Sch.

The Henrys instituted their administrative challenge to the proposed IEP on August 13, 1998, by requesting a "due process" hearing before the New Hampshire Department of Education. They first raised their stay-put claim in a telephone conference with the administrative hearing officer on November 18, 1998. The hearing officer refused to consider their stay-put claim, however, because she determined that it was untimely. See Status Conference Order of 11/20/98 (appended to document no. 8).

After failing to obtain a ruling on their stay-put claim from the hearing officer, the Henrys commenced this action for a preliminary injunction on November 24, 1998. That same day, in response to the School District's motion for limited expansion of the issues, the hearing officer reconsidered her earlier order and concluded that "for reasons of judicial economy, it may be wise for this body to resolve the [stay-put] matter." Order of 11/24/98 (appended to document no. 8). Because the Henrys had already paid their federal court filing fees and commenced their

---

Dist. No. 200 v. Illinois State Bd. of Educ., 21 F. Supp. 2d 862, 877 (N.D. Ill. 1998) (applying Florence County and finding unilateral parental placement of child at Eagle Hill reimbursable despite lack of state certification because the IDEA definition of a "free appropriate public education" requiring that placements be state certified does not apply to parental placements).

preliminary injunction action, however, they decided to pursue their stay-put claim in federal court.

The hearing officer held a hearing on the merits of the Henrys' challenge to the proposed IEP during the week of December 14-21, 1998. On February 2, 1999, the hearing officer issued a final order concluding that the proposed IEP was "reasonably calculated to confer educational benefits" and "[t]he goals and objectives contained in Matthew's 1998-99 IEP appropriately address all of his unique needs, including social skill development, based on the results of comprehensive evaluative information." In re Matthew H., IDPH No. 98-040 at 22 (Feb. 2, 1999). The Henrys filed a timely federal court action challenging this decision, which has been consolidated with the present case.

I held a hearing on the Henrys' request for a preliminary injunction on April 5, 1999. After receiving offers of proof and giving the parties an opportunity to produce evidence on any disputed factual issues, I granted the Henrys' request for a preliminary injunction requiring the School District to fund Matthew's remaining tuition, room, and board at Eagle Hill. I reserved judgment, however, on their request for reimbursement of

costs they incurred in placing Matthew at Eagle Hill prior to the issuance of the preliminary injunction.

## III.

The Henrys' claim for a preliminary injunction is based upon 20 U.S.C.A. § 1415(i)(2)(B)(iii) and the IDEA's stay-put provision. Before considering these provisions, I first provide an overview of the IDEA's requirements and dispose of defendants' administrative exhaustion argument.

### A. The IDEA and the Right to a Free and Appropriate Public Education

The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for employment and independent living." 20 U.S.C. § 1400(d)(1)(A) (Supp. 1998). A disabled child's right to a free and appropriate public education is assured by the development and implementation of an IEP. See Honig v. Doe, 484 U.S. 305, 311-12. An IEP must contain both a statement of the child's "present levels of educational performance" and "a statement of the special education and related services and supplementary aids and

services to be provided to the child." 20 U.S.C.A. § 1414(d)(A)(i) and (iii). IEPs must be revised "not less than annually." 20 U.S.C.A. § 1414(d)(4)(A)(i).

The IDEA also provides the parents of a disabled child with a number of important procedural safeguards. A disabled child's parents must be included as part of the team that develops and reviews a child's IEP. See 20 U.S.C.A. § 1414(d)(1)(B)(i). Parents are also entitled to examine all records relating to the child, to participate in meetings concerning the child's educational placement, to obtain an independent educational evaluation of the child, to receive written notice of any proposal to alter or to refuse to alter the child's educational placement, to present complaints with respect to the child's educational placement, and to submit any disputes concerning the child's placement to mediation. See 20 U.S.C.A. § 1415(b). Parents also have the right to an impartial due process hearing before a local or state educational agency and a right to an administrative appeal to the state educational agency if the initial due process hearing is held before a local educational agency. See 20 U.S.C.A. §§ 1415(f), (g), and (h). Finally, parents have the right to bring a civil action in federal

-11-

district court if they are aggrieved by the results of the state administrative proceedings.  See 20 U.S.C.A. § 1415(i)(2)(A).

**B.    The IDEA's Administrative Exhaustion Requirement**

A party seeking relief under the IDEA ordinarily must exhaust administrative remedies before filing suit in federal court.  See Pihl v. Massachusetts Dep't of Educ., 9 F.3d 184, 187 (1st Cir. 1993).  Defendants invoke this general rule in arguing that the Henrys' request for injunctive relief must be rejected because they failed to obtain a ruling on their stay-put claim from the state hearing officer before filing their claim in federal court.

Several courts in other jurisdictions have held that the IDEA's exhaustion requirement does not apply to claims for temporary or preliminary relief to alter or maintain an educational placement during the pendency of an administrative challenge to an IEP.  See, e.g., Digre v. Roseville Sch. Indep. Dist. No. 623, 841 F.2d 245, 250 (8th Cir. 1988) ("federal courts have the authority to entertain preliminary injunctions determining the placement of children during the pendency of state proceedings"); Cole v. Metropolitan Gov't of Nashville and Davidson County, Tenn., 954 F. Supp. 1214, 1222 (M.D. Tenn. 1997); Gadsden City Bd. of Educ. v. B.P., 3 F. Supp. 2d 1299,

-12-

1303-05 (N.D. Ala. 1998). I need not determine whether these rulings are correct, however, because the present case is governed by the well-established futility exception to the IDEA's exhaustion requirement. See Honig, 484 U.S. at 327; Pihl, 9 F.3d at 190.

The Henrys attempted to present their stay-put claim to the state hearing officer and did not seek relief in federal court until after the hearing officer refused to consider their claim. Given this refusal, the Henrys reasonably concluded that further efforts to pursue their stay-put claim through the administrative hearing process would be futile. Although the hearing officer later reconsidered her decision, it would be unfair to the Henrys to require them to abandon their federal action and go back to Department of Education in this time-sensitive matter. Accordingly, the Henrys are entitled to proceed with their stay-put claim in federal court.

## C.  The IDEA's "Stay-Put" Provision

### 1.  Overview

Given the IDEA's extensive procedural protections, it is not uncommon for disputes concerning a child's educational placement to remain in litigation for several years. See School Comm. of the Town of Burlington, Mass. v. Dep't of Educ. of the Common-

-13-

wealth of Mass., 471 U.S. 359, 361 (1985). Concomitantly, an issue arises regarding the proper interim placement for an allegedly disabled child while the dispute resolution process is ongoing. See id. The IDEA's "stay-put" provision resolves this issue by specifying that a child must ordinarily remain in his "then-current educational placement" until the placement dispute has been resolved. See Susquenta Sch. Dist. v. Raelee S., 96 F.3d 78, 83 (3rd Cir. 1996).

The IDEA does not expressly address the relationship between the stay-put provision and a district court's power pursuant to 20 U.S.C.A. § 1415(1)(2)(B)(iii) to enforce the IDEA through the issuance of preliminary injunctions. The IDEA's legislative history also sheds little light on the issue.[3] Nevertheless,

_____

[3] The only relevant history is a statement made on the Senate floor by Senator Strafford, a Conference Committee member and a co-sponsor of the legislation that contained the stay-put provision. In describing the provision's effect to his colleagues, Senator Strafford stated:

> We did feel, however, that the placement, or change of placement should not be unnecessarily delayed while long and tedious administrative appeals were being exhausted. Thus, the conference adopted a flexible approach to try to meet the needs of both the child and the state.

121 Cong. Rec. 37412 (Nov. 19, 1975). This reference supports the view, later endorsed by the Supreme Court in Honig, that the stay-put provision was not intended to interfere with a court's power to alter a child's educational placement in appropriate cases through the issuance of a preliminary injunction. See Doe

-14-

certain United States Supreme Court and First Circuit Court of Appeals decisions provide a legal framework for analyzing the specific issues presented by this case.

First, the Supreme Court has determined that the stay-put provision was intended

> to strip schools of the unilateral authority they had traditionally employed to exclude disabled students, particularly emotionally disturbed students, from school. In so doing, Congress did not leave school administrators powerless to deal with dangerous students; it did, however, deny school officials their former right to "self-help," and directed that in the future the removal of disabled students could be accomplished only with the permission of the parents or, as a last resort, the courts."

Honig, 484 U.S. at 323-24. It does not, however, prohibit a federal court from altering a child's placement in appropriate cases through the issuance of a preliminary injunction. See Honig, 484 U.S. at 327. Instead, the provision merely states a legislative preference for maintaining the placement during the pendency of an IDEA dispute. The preference may be overcome through the issuance of a preliminary injunction if the equitable factors traditionally used by courts to evaluate requests for interim injunctive relief favor a change in the child's

_____

v. Brookline Sch. Comm., 722 F.2d 910, 918 (1st Cir. 1983).

placement.[4]  See Honig, 484 U.S. at 327 ("[t]he stay-put provision in no way purports to limit or pre-empt the authority conferred on courts by § 1415(e)(2). . . indeed it says nothing whatsoever about judicial power"); see also Doe, 722 F.2d at 917.

Second, the First Circuit has held that the stay-put provision entitles the parents of a disabled child to a preliminary injunction preserving the child's current placement during the pendency of an IDEA dispute unless the School District can demonstrate that the application of the traditional preliminary injunction criteria warrant a different result.  See Brookline Sch. Comm., 722 F.2d at 917, 919 (party seeking to modify the status quo, may obtain injunctive relief by proving that a preliminary injunction changing the placement should issue); Compare with Drinker v. Colonial Sch. Dist., 78 F.3d 859, 864 (3d Cir. 1996)(stay-put provision gives parents a right to an automatic injunction); Zvi v. Ambach, 694 F.2d 904, 906 (6th Cir. 1982)(same); Board of Educ. of Comm. High Sch. Dist. No. 218, Cook County, Ill. v. Illinois State Bd. of Educ., 103 F.3d 545,

_____

[4]  These factors include (1) likelihood of the movant's success on the merits; (2) the potential that the movement will suffer irreparable harm if the injunction is not issued; (3) the comparable harm to the defendant if an injunction is issued; and (4) the effect of a grant or denial of injunctive relief on the public interest.  See Philip Morris, Inc. v. Harshbarger, 159 F.3d 670, 673 (1st Cir. 1998).

549-50 (7th Cir. 1996) (noting that to import the equitable factor test into the stay-put provision would "dilute the statutory framework").[5]

Third, both the Supreme Court and the First Circuit have provided guidance concerning the respective rights of parents and school districts to obtain reimbursement for costs incurred in maintaining or changing an interim placement during the pendency of an IDEA dispute. If the parents and the local educational agency agree on an interim placement, the school district must fund the interim placement without a right to reimbursement. See 20 U.S.C.A. § 1415 (j) (Supp. 1998) (stay-put placement must be

---

[5] I disagree with those courts that have suggested that the stay-put provision provides the parents of a disabled child with a right to an automatic injunction. See Drinker, 78 F.3d at 864; Zvi, 694 F.2d at 549-50; Community High Sch. Dist. No. 218, 103 F.3d at 550. A true automatic injunction cannot be defeated by evidence tending to show that the issuance of the injunction will cause greater harm to the defendant or the public than its denial. See, e.g., Tennessee Valley Auth. v. Hill, 437 U.S. 153, 193-94 (1978) (injunction issued to enforce the Endangered Species Act without an evaluation of the harm that the issuance of the injunction would cause to the defendant and the public). A request for a stay-put injunction, in contrast, can be defeated by proof that greater harm is likely to result from the issuance of an injunction than it's denial. See Honig, 474 U.S. at 327; Doe, 722 F.2d at 919. Accordingly, the stay-put provision does not, strictly speaking, authorize the issuance of automatic injunctions. Instead, it entitles parents to injunctive relief upon proof of a violation unless the School District can determine that the application of the preliminary injunction favors the proposed change in placement.

maintained unless "the state or local educational agency and the parents otherwise agree"). Similarly, if a local educational agency refuses to pay for the proposed interim placement but the parents obtain an order from the state educational agency approving the placement, the school district must pay for the placement from the date of the agency decision, without a right to reimbursement, even if a federal court reviewing the decision later rules in the School District's favor. See Town of Burlington v. Department of Educ. for the Commonwealth of Mass., 736 F.2d 773, 800-01 (1st Cir. 1984), aff'd, 471 U.S. 359 (1985). If a local educational agency refuses to pay for a proposed interim placement and, rather than obtaining a favorable ruling from the state educational agency, the parents obtain a preliminary injunction maintaining or altering the placement, the school district must bear the cost of the placement from the date that the injunction issues, subject to a right to reimbursement if it prevails on the merits. See Doe, 722 F.2d at 921; Burlington, 436 F.2d at 801 n.35 (explaining that federalism concerns justify the "safe harbor" from a reimbursement obligation that arises after a state administrative agency decision in the parents' favor but noting that a similar "safe harbor" is not created by the issuance of a federal court

injunction).  Finally, if the parents unilaterally remove their child from his current placement, they must initially bear the cost of the new placement and will not be entitled to reimbursement unless they prevail on the merits.  See School Comm. of the Town of Burlington, Mass., 471 U.S. at 373-74.  With these points of reference in mind, I turn to the specific issues raised by this case.

## 2.  Analysis

Neither the Henrys nor the School District contend that Matthew's educational placement should be "changed" during the pendency of the Henrys' challenge to the proposed IEP.  Instead, each side argues that its suggested placement properly qualifies as Matthew's "then-current educational placement" and that the other side is proposing to fundamentally alter the placement.  To determine whether the Henrys are correct in asserting that the School District's proposed IEP would significantly alter Matthew's educational placement, I must first determine how the burden of proof on the issue should be allocated between the parties.  I then consider the merits of the Henrys' stay-put claim.

a.  Burden of Proof

The First Circuit has determined that the stay-put provision represents a legislative preference for maintaining a child's then-current educational placement during an IDEA dispute that can be overcome only if the party seeking to change the placement can demonstrate an entitlement to preliminary injunctive relief. See Doe, 722 F.2d at 919.  Neither the Supreme Court nor the First Circuit, however, has considered how the burden of proof should be allocated when the issue that the court must decide is whether a change in placement would occur as a result of a child's transfer to a different program.  In Lunceford v. District of Columbia Bd. of Educ., 745 F.2d 1577 (D.C. Cir. 1984), the District of Columbia Circuit Court of Appeals somewhat cryptically addressed the issue by stating that the party seeking to enforce the stay-put provision "must identify, at a minimum, a fundamental change in, or elimination of a basic element of the educational program in order for the change to qualify as a change in educational placement."  Id. at 1582 (emphasis added); see also Tennessee Dept. of Mental Health and Mental Retardation v. Paul B., 88 F.3d 1466, 1474 (6th Cir. 1996) (citing Lunceford).  One court has construed Lunceford to require only that an applicant for stay-put relief allege a stay-put violation

in order to establish a claim for injunctive relief. See <u>Cole v.</u> <u>Metropolitan Gov. of Nashville and Davidson County Tenn.</u>, 954 F. Supp. 1214, 1220 (M.D. Tenn. 1997) (emphasis added). I reject this interpretation because it would require a court to issue a preliminary injunction in virtually every case in which a stay-put violation has been alleged, regardless of whether the evidence demonstrates that an actual violation has occurred. Instead, I agree with the District Court for the District of Columbia, which has held that in order to obtain a stay-put injunction, the party alleging the violation must <u>prove</u> that a change in educational placement is being proposed. See <u>Roher v.</u> <u>District of Columbia</u>, 1989 WL 330800 at *3 (D.D.C. Oct. 11, 1989) (emphasis added). Consistent with First Circuit precedent, if the Henrys can demonstrate that the School District is proposing to change Matthew's placement, they will be entitled to a preliminary injunction preserving his prior placement until the merits of the claim can be addressed. See <u>Doe</u>, 722 F.2d at 919.

   b. <u>Identifying the "Then-Current</u>
     <u>Educational Placement"</u>

The issue at the heart of the Henrys' claim is whether the School District's proposed IEP would change Matthew's "then-current educational placement" sufficiently to entitle Matthew to

a preliminary injunction. This question cannot be resolved simply by determining whether the School District is proposing to change the physical location where Matthew will attend school. See Weil v. Board of Elementary and Secondary Educ., 931 F.2d 1069, 1072 (5th Cir. 1991); Concerned Parents & Citizens for the Continuing Educ. at Malcolm X (PS 79) v. New York City Bd. of Educ., 629 F.2d 751, 754 (2d Cir. 1980). Nor does the School District's proposal to move Matthew from a private residential school to a public school necessarily constitute a fundamental alteration of his placement. See Knight v. District of Columbia, 877 F.2d 1025, 1028 (D.C. Cir. 1989). Instead, to resolve this vexing question, I must consider all of the relevant circumstances including: (1) whether the educational program set out in the proposed IEP is a revision of the prior IEP; (2) whether Matthew will be educated with non-disabled children to the same extent under the proposed IEP; (3) whether he will have the same opportunities to engage in non-academic and extra-curricular activities; and (4) whether the proposed placement represents a significant change in position along the continuum from the most restrictive to the least restrictive placement options. See Letter to Fisher, 21 IDELR 995 (1/26/95).

In the instant case, several factors lead me to conclude that the School District's proposed IEP would fundamentally alter Matthew's then-current educational placement. First, Matthew was taught at Linden Hill in classes with a teacher-student ratio of 1-3 or 1-4. In contrast, under the School District's proposed IEP, Matthew would receive small group instruction in math and language arts, but would attend classes with up to 18 students per teacher in other subjects. Second, Matthew's educational program at Linden Hill provided a highly structured educational environment with an emphasis on intense instruction and repetition and minimal exposure to distractions or disturbances. In contrast, the School District's proposed IEP would require Matthew to change classes 6-7 times per day, exposing him to the chaos of hallway travel between classes with 1500 other students. Third, Matthew's exposure to extracurricular athletic and social activities would change significantly under the proposed IEP. He would no longer be required to participate in cooperative extra-curricular programs designed specifically for students with disabilities, but instead, would be afforded an opportunity to "compete" for spots with non-disabled children in programs not geared to handle his special needs. Finally, while it ultimately may be to Matthew's benefit, the proposed IEP would remove him

from an environment where he is surrounded by other students with similar learning disabilities and place him in a large school with predominantly non-disabled students.  This factor alone illustrates that Matthew's placement on the continuum would be changed, constituting a fundamental alteration sufficient to trigger the protections of the stay-put provision. Considered collectively, I am satisfied that the numerous differences between Matthew's prior educational placement and the new placement contemplated by the proposed IEP would constitute a fundamental alteration of Matthew's then-current educational placement.  Given that the School District has not demonstrated that this change in placement is warranted pending the resolution of the Henry's challenge to the proposed IEP, I conclude that the Henrys are entitled to a preliminary injunction preserving Matthew's then-current placement.

A question remains regarding the appropriateness of treating the Eagle Hill placement as Matthew's stay-put placement. Matthew is now too old to attend Linden Hill.  In such circum-stances, a local educational agency must fulfill its stay-put obligation by placing a disabled student at a comparable facility.  See McKenzie v. Smith, 771 F.2d 1527, 1533 (D.C. Cir. 1985) (requiring the school district to place child in a program

similar to the one that the child grew out of for the duration of the administrative proceedings); Letter to Fisher, 21 IDELR 995 (where a child cannot remain in his current educational placement, the "[d]istrict would be required to maintain the child in an educational program that is substantially and materially the same as the student's placement . . . during the [previous] school year"). In this case, Eagle Hill provides an experience substantially similar to Matthew's prior placement at Linden Hill. As the School District has failed to identify any other acceptable alternative placement, it must pay for Matthew's placement at Eagle Hill pending the resolution of the Henrys' challenge to the proposed IEP.

      c.   <u>Reimbursement</u>

The School District argues that it should not be required to reimburse the Henrys for costs that they incurred in placing Matthew at Eagle Hill prior to the issuance of the preliminary injunction. I reject this argument. The IDEA specifically authorizes courts to enforce its provisions by awarding "such relief as the court determines is appropriate." 20 U.S.C.A. § 1415(i)(2)(B)(iii). The Supreme Court has confirmed that this provision authorizes a federal court to issue preliminary injunctions, <u>see</u> <u>Honig</u>, 484 U.S. at 327, and the IDEA does not

expressly bar a court from requiring a school district to reimburse parents on an interim basis for costs that they incurred in maintaining a stay-put placement prior to the issuance of a preliminary injunction. The Henrys are persons of limited means who had to obtain a loan to maintain Matthew at Eagle Hill. I have already determined that the School District violated the stay-put provision by refusing to fund the Eagle Hill placement. I see no reason why the court's inability to reach the merits of the Henrys' preliminary injunction claim earlier should allow the School District to initially shift much of the cost of Matthew's placement at Eagle Hill onto his parents. Accordingly, the School District must, for now, reimburse the Henrys for the costs that they incurred in maintaining the Eagle Hill placement prior to the issuance of this preliminary injunction. Consistent with First Circuit precedent, however, the Henrys will be required to reimburse the School District for all costs that the District incurs in maintaining the placement if it ultimately prevails on the merits. See Brookline Sch. Comm., 722 F.2d at 921; Burlington, 736 F.2d at 801 n.35.

## IV.

For the reasons set forth herein, I order the Keene School District to pay for the cost of maintaining Matthew Henry's placement at Eagle Hill until further order of the court. The School District shall also reimburse the Henrys for any payments made by the Henrys for Matthew's tuition, room, and board at Eagle Hill prior to the issuance of this preliminary injunction.

SO ORDERED.


_____
Paul Barbadoro
Chief Judge


June 28, 1999

cc:  Diane McCormack, Esq.
     Richard O'Meara, Esq.
     Mark Attori, Esq.